María Turiana Busquets, etc., Plaintiff and Appellant, *v.* Sixto Nieto, Defendant and Appellee.

No. 8121.    Argued December 4, 1940.—Decided January 15, 1941.

*Carlos D. Vázquez* for appellant.    *M. Figueroa del Rosario* and *G. López de Victoria* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

The essential facts of this case chronologically stated are as follows:

On June 5, 1927, the Municipality of Añasco granted to Ramón González the usufruct of a lot measuring 270.55 square meters located in the corner of Barceló and Caridad Streets in that town. In the deed of grant the grantee González declared that a one-story, zinc-roofed, concrete house had been erected on said lot, and by virtue of such declaration the building was recorded in his name in the Registry of Property of Mayagüez, on August 7, 1928, at page 170 of volume 38 of Añasco, property No. 1636, first inscription. On June 11, 1927, González sold the said house to Gabriel Palerm for $3,500, value received. On February 20, 1931, the Palerm spouses sold it to Juan Lladó and the latter and his wife conveyed it on December 17, 1931, to Sixto Nieto González for the price of $800, of which the purchaser paid $200 in cash and the balance of $600 was deferred and secured by a mortgage on the same house. The mortgage thus constituted by Sixto Nieto in favor of Lladó was assigned by the latter and his wife, on the same day of the constitution thereof, to Damián Busquets Pastor. On the death of the latter, the mortgage claim passed to his daughter, plaintiff and appellant herein. Sixto Nieto, the defendant, paid to the plaintiff the first two instalments of the mortgage claim, amounting to $100 each, and refused to pay the remaining instalments, which totalled $400, plus $70 as accrued interest. Seeking to recover said sums plus $100 stipulated for costs, expenses, and attorney's fees, María Turiana Busquets brought suit in the District Court of Mayagüez.

On *January 7, 1928,* the Municipality of Añasco granted to the said Ramón González the usufruct of a lot measuring 3,763 square feet, located in Barceló Street, Añasco. In the deed of grant González declared that he had built on said lot a zinc-roofed warehouse, and valued it at $1,500, said

deed being recorded in the Registry of Mayagüez on February 15, 1928, at page 244, volume 37 of Añasco, property No. 1621, first inscription. On the 20th of that same month and year, González mortgaged in favor of José D. Pérez González the house so recorded, and said mortgage was recorded on February 23, 1928, at page 244, volume 37 of Añasco, property No. 1621, second inscription. On October 12, 1929, Pérez and his wife assigned the mortgage credit to Miguel A. García Méndez. The latter brought suit to foreclose the mortgage and at the public sale the mortgaged property was awarded to the foreclosing creditor and recorded in his favor, and it was thereafter conveyed to José N. Nieto, brother and attorney in fact of the defendant, and present occupant of the immovable.

The defendant answered and denied generally the essential averments of the complaint; and subsequently, without leave of court, filed an amended answer, in which he alleged that upon the demand for payment having been served on him by García Méndez when the latter foreclosed the mortgage, the defendant notified the plaintiff that he was not willing to continue paying the outstanding instalments as it had turned out that the house which Lladó sold him was the same one which had been foreclosed by García Méndez, for which reason the defendant was compelled to deliver the house to García Méndez, who subsequently sold it and delivered it to José N. Nieto; and, further, that the defendant had made demand upon the plaintiff for the return of the $200 which he had paid to her by mistake. And by way of counterclaim the defendant prayed that the plaintiff be adjudged to pay the sum of $200, with interests and costs.

After the case had been tried by the District Court of Mayagüez, the latter rendered judgment dismissing the complaint on the merits, without special imposition of costs, and thereupon the plaintiff took an appeal, which she based on seven assignments of error that we will discuss briefly.

■ The first assignment relates to the refusal of the lower court to strike from the record the amended answer and the evidence introduced by the defendant to support the special defenses alleged.

The original answer was filed on May 8, 1938, and contained a general denial of the essential averments. On October 11, 1938, or eight days before the day set for the trial of the case, the defendant filed, without a previous leave of court, an amended answer setting up the special defenses to which we have already referred. A copy thereof was served on the plaintiff on the same day. At the trial, after the oral and documentary evidence of the plaintiff had been introduced, the attorney for the plaintiff moved that the amended answer be stricken out, and his motion was denied. Subsequently, he objected to the admission of all the evidence offered by the defendant to support the special defenses, and took the proper exceptions.

In our judgment, the lower court erred in refusing to strike out the amended answer which had been filed without its consent.

Section 139 of the Code of Civil Procedure in its pertinent part provides:

"Section 139.—Any pleading may be amended once by the party of course and without costs, at any time before answer or demurrer is filed, or after demurrer and before the trial of the issue of law thereon, by filing the same as amended, and serving a copy on the adverse party, who may have ten days thereafter in which to answer or demur to the amended pleading. . .''

Construing section 472 of the Code of Civil Procedure of California which is equivalent to section 139 of our code, *supra,* the Supreme Court of that state held, under the same circumstances as those present in the case at bar, that the defendant had no absolute right to file an amended answer after the expiration of the term which the same code grants to the plaintiff to demur to the answer.

The first case in which this same question was raised was *Tingley* v. *Times Mirror Co.*, 151 Cal. 1. The original answer in said case was filed on March 29, 1902. The plaintiff failed to interpose a demurrer to said answer. The case was set for trial on December 16, 1902. On the day before the trial, the defendant, without leave of court, filed an amended answer which it served on plaintiff. At the trial, the plaintiff moved to strike out the amended answer because the same had been filed without leave of court or legal authorization, and because it changed the issues already made, but introduced new defenses. The court granted the motion to strike, the defendant took an exception, and in its appeal from an adverse judgment it assigned as error the action of the lower court in striking out an amended answer. In affirming said judgment, the Supreme Court said:

"The precise point made by appellant has not heretofore been passed on by this court, and we are aided none by a consideration of the authorities cited by appellant from other jurisdictions, because, as we read these authorities, they deal with statutory provisions relating to amendments either giving an absolute right to amend, by express language, at any time, or providing that the amendment may be made at any time before trial. But under a most liberal construction of our statutory provision no such right is conferred. In fact, it is insisted by respondent that under the section the only right conferred is the right to amend the complaint before answer or demurrer is filed thereto, or while the issue raised by demurrer to it is undetermined. The obvious purpose of the section, however, negatives such a strict construction, even if the language used might warrant it. The provision is in aid and furtherance of the right of parties litigant to amend all pleadings with a view of presenting for trial the real merits of a controversy—assertive and defensive—and to that end it should be liberally construed. It would be eminently unjust, except where no other conclusion was warranted, to hold that it was the purpose of the section to confer a right upon the plaintiff to amend his pleadings which was denied a defendant. But while the section is to be construed liberally as conferring an equal right to amend upon both parties as to all pleadings, still its terms are not to be enlarged by such construction so as

to confer greater rights upon one in that respect than are accorded to the other, or to work a hardship on either party, or to interfere with the progress of a trial after the issues of fact have been made. This right to amend, while aplying to the pleadings of both parties, has its limitation as to the time within which either may exercise it under the section, and such time is not extended in behalf of the defendant beyond final joinder on the issues of fact in the case.

"Appellant claims that it had a right to amend at any time before trial because plaintiff did not demur to the answer. Its position is that the terms of the section providing that 'any pleading' may be amended at any time 'before answer or demurrer filed,' must be construed as extending the period for filing an amended answer up to the time of the trial, unless the plaintiff demurs to the original answer and the demurrer is disposed of. Under this theory of appellant the right of defendant to amend is curtailed, or extended, as the plaintiff elects to demur or not to demur; that notwithstanding the answer is unassailable, plaintiff must still file a frivolous demurrer to it, and have such demurrer determined, in order to preclude defendant from amending. Certainly the legislature never contemplated such an idle act. In providing that a peading might be amended 'before demurrer filed,' it was intended to give the right to amend, within the legal time the adverse party had within which to demur, without waiting to have the defect in the pleading pointed out on demurrer, or without taking the hazard that his adversary would no demur, and so preclude him from amending as of course under the section. It was not intended to confer a special right on a defendant to amend because plaintiff had not gone through the idle ceremony of demurring to an apparently good and sufficient answer. The construction which, in our judgment, is to be given to the section and which commends itself as a reasonable and consistent one, is that the right of plaintiff to amend his complaint as of course is extended only up to the time when the answer of defendant is filed, or if a demurrer is interposed by defendant only while the issue of law raised thereby is undetermined. If the defendant answers without demurring, or if his demurrer to the complaint is overruled, the right of plaintiff under the section to amend as of course is gone. The right of defendant to amend can be exercised only during the time that a demurrer to the answer if interposed by plaintiff is undetermined, or should the plaintiff not demur, then the defendant is concluded from amending as of course under the section, by the expiration of the time within which such demurrer might

have been interposed. When the demurrer of the plaintiff to the answer is overruled, or the time has expired within which the plaintiff might have demurred to the answer, the issues of fact are then fully joined and the right of defendant to amend under the section as of course is gone.

"This we think is the reasonable construction to be placed on the section. Under this construction equal rights to amend are given to both parties; each has a right to amend while the issue of law raised by demurrer to his pleading is undetermined. Where a demurrer is not interposed the right of plaintiff to amend is concluded by the answer of defendant, and the right of defendant is concluded by the expiration of time within which plaintiff might have demurred to the answer.

"This construction is likewise fair and just to all parties and works no injury or hardship, which might in many instances otherwise follow if the construction contended for by appellant that he had an absolute right to amend his answer at any time before trial was to obtain. If this were true, then by filing his amended answer on the morning of the trial, after the case had been at issue for months, and when plaintiff was prepared for trial, and ready with his witnesses to proceed, defendant could compel plaintiff, either to proceed with the case under new issues he was not prepared to try, or compel him to obtain a continuance of the cause, possibly at great expense. No relief could be granted plaintiff for the loss incurred by him under such circumstances; no terms could be imposed upon the defendant though the filing of his amended answer at that time worked a continuance, because if, as contended by appellant, he had an absolute right to file his amended answer at that time, he was entitled to do so, no matter what hardship was worked to his adversary; and as his right was absolute, no terms or conditions could be imposed by the court on its exercise. It was never contemplated by the section that the right of defendant to amend should be extended so as to make such results possible. . . . This is not only a reasonable and fair construction, but is one which creates no hardship, because, even after issue joined, the trial court under section 473 of the Code of Civil Procedure is authorized to permit amendments to the pleadings in furtherance of justice."

The rule laid down in *Tingley* v. *Times Mirror Co., supra,* was again confirmed and applied in the case of *Manha* v. *Union Fertilizer Co.,* 151 Cal. 581, in which the amended

answer was filed ten days before the tral of the case, without leave of court, and stricken from the record on a motion of the plaintiff presented during the trial. See also *Segerstrom* v. *Scott*, 16 Cal. App. 259, 116 Pac. 690; *Farmer's & Mechanics' Bank* v. *Gallaher Inv. Co.*, 43 Idaho 496, 253 Pac. 383; and *Meredith* v. *Bitter Root Valley Irr. Co.*, 141 Pac. 643.

Section 116 of our Code of Civil Procedure grants to the plaintiff the same term to interpose a demurrer to the answer of the defendant as is granted to the latter to file an answer. The original answer of the defendant in the case at bar was filed on May 2, 1938. The time during which the plaintiff could have filed, but failed to file, a demurrer to the original answer expired on May 22, 1938; and, in accordance with the jurisprudence that we have cited, that was the date of expiration of the right which section 139 of the Code of Civil Procedure grants to the defendant to amend his answer once without having to request leave of court for that purpose.

The amended answer filed on October 11, 1938, after the expiration of the term and without leave of court, has no legal existence as a pleading and should be stricken out from the record. *Martínez* v. *Succession of Arocena et al.*, 23 P.R.R. 344; *P. R. Ry. Light & Power Co.* v. *Campillo, District Judge*, 28 P.R.R. 928; *Staton* v. *Virginian Ry Co.*, 195 S. E. 601; *Paramount Publix Corporation* v. *Boucher*, 93 Mont. 340, 19 P. (2d) 223; *Reinhardt* v. *Security Ins. Co.*, 4 N. E. (2d) 883.

The defendant in this case neither asked leave to amend his answer before filing the same, as he was bound to do, nor invoked at the trial the discretionary power which section 140 of the Code of Civil Procedure confers to the court, in furtherance of justice, and on such terms as it may deem proper, to allow a party to amend any pleadings or proceedings. The defendant insisted on his supposed absolute right to amend his answer at any time before

the trial of the case and he induced the court to accept his erroneous interpretation of the statute and he can not now complaint of the consequences of his own act.

The argument of the appellee in attempting to destroy the weight of the cases from California which we have cited fails to convince us. The circumstance that the decisions in *Tingley* v. *Times Mirror Co.* and *Manha* v. *Fertilizer Co., supra,* should have been rendered approximately forty years ago does not weaken in any way the reasoning and grounds on which they were based. This is proved by the fact that notwithstanding the time elapsed, those decisions still stand, pointing out the course to be followed in the prosecution of suits. Good precedents, like good wine, become better as they grow older, and their aroma and spirit improve with age.

If, as we have decided, the lower court erred in refusing to strike from the record the amended answer, it also necessarily erred in admitting the whole evidence offered to support the special defenses set up by the defendant. With the amended answer stricken out as it should have been, the case ought to have been heard on the complaint and the original answer as the only pleadings. And the only evidence admissible was such as tended to establish or deny the essential averments of the complaint.

The complaint in this case alleged the constitution of the mortgage in favor of Lladó; the assignment of the mortgage credit made by Lladó in favor of the predecessor in interest of the plaintiff; the acquisition of said credit upon the death of her father; the nonpayment of the last three instalments and of the interest thereon; and the refusal of the defendant to pay them. The original answer denied all those allegations. The amended answer also denied them; but it admitted them in setting up the special defenses. The evidence of the plaintiff is amply sufficient to support all the essential averments of her complaint. That of the de-

fendant which was erroneously admitted by the lower court, does not in any way overcome said averments; on the contrary it admits them, and seeks to avoid the effect thereof by establishing the special defenses which were not timely alleged. See *Piercy* v. *Sabin,* 10 Cal. 22; *Hawkins* v. *Borland,* 14 Cal. 413; *Coles* v. *Soulsby,* 21 Cal. 47; *Michalitschke* v. *Wells, Fargo & Co.,* 118 Cal. 683, 50 Pac. 847.

As all of the remaining alleged errors assigned are a result of the first one committed, we deem it unnecessary to consider them.

For the reasons stated the judgment appealed from must be reversed and another rendered instead adjudging the defendant Sixto Nieto to pay to the plaintiff María Turiana, otherwise called María Flumiana Busquets, the sum of $570 claimed in the complaint with interest on the sum of $400, amount of the unpaid instalments at the stipulated rate of 10 per cent per annum from January 31, 1938, date of the filing of the complaint, until fully paid.